IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                        )<br>            Plaintiff,                              )<br>                                                        )<br>     vs.                                             )<br>                                                        )<br> JAMES WILLIAM TILDEN and   )<br> LINDA TILDEN,                             )<br>                                                        )<br>            Defendants.                      )<br> _____) | NO.   CR 03-01377-TUC-RCC(BPV)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO SUPPRESS** |

On September 24, 2003, a Superseding Indictment (Docket # 16) was filed against Defendants James William Tilden and Linda Tilden concerning events that occurred on June 15, 2003. They were indicted for conspiracy to possess with intent to distribute, possession with intent to distribute 100 to 1,000 kilograms of marijuana, and possession of a firearm in relation to drug trafficking.  On July 27, 2007, Defendant Linda Tilden filed a Motion to Suppress the agents' entry upon Defendants' property (Docket # 47).  Defendant James William Tilden filed a Joinder on July 27, 2007 (Docket # 48) and on October 30, 2007, a Supplemental Memorandum in Support of Motion to Suppress regarding the search of Defendants' home (Docket # 59).  On November 9, 2007, the Government filed an Opposition regarding the search of Defendants' home (Docket # 63) and a Response regarding entry upon Defendants' property (Docket # 64).

The matter came on for Evidentiary Hearing before the Court on January 17, 2008. The Government called as witnesses U.S. Border Patrol Agents Jorge Gonzalez, Andrew

1  Scharnweber, and Darryl May. The Defendants called James William Tilden.

2  The Court, having considered the briefing, arguments, and evidence presented,
3  recommends that the District Judge, after his independent review and consideration, enter an
4  order **DENYING** Defendants' Motions to Suppress.

## FACTS

6  U.S. Border Patrol Agent Jorge Gonzalez was on duty near Arivaca, Arizona, June
7  15, 2003. Agent Gonzalez was 10 air miles from the Mexican border, tracking foot sign on
8  a known smuggling trail. The trail forked north and east. There was no evidence presented
9  that the east fork leading to the Defendants' property was also a known smuggling trail.

10  Agent Gonzalez did know that fresh foot sign existed on the east fork of the trail. The
11  foot sign was fresh, but not so much as to suggest the immediate presence of its makers. As
12  Agent Gonzalez was following the foot sign on the trail, he came upon a downed barbed wire
13  fence. He walked over the fence, following the footprints.

14  The agent claimed not to be aware of the fact that he was on private property. At any
15  rate, once he was up to 150 yards onto the property, he came to the end of the trail and
16  observed a structure (gazebo) on its side. To the right of the structure, he saw a cellar-like
17  construction containing what he believed to be bundles of marijuana.

18  This open cellar structure was 150 to 200 feet from a house. Between the house and
19  structure, there was a driveway and shrubbery that delineated the driveway. The effect of
20  the shrubbery was to separate the cellar and gazebo from the residence.

21  Agent Gonzalez encountered Defendant James William Tilden and arrested and
22  handcuffed him. Defendant Linda Tilden was called out of the house by Mr. Tilden,
23  whereafter she was also arrested and handcuffed. Agent Gonzalez, in the presence of his
24  partners, U.S. Border Patrol Agents Andrew Scharnweber and Darryl May, asked the
25  Defendants for permission to search. Both Defendants said, "Go ahead." The operation
26  resulted in the discovery of 437.2 pounds of marijuana, bundled cash, a .38 caliber pistol, and
27  two 7.62 x 39mm caliber rifles.

28  The Defendants consented to the search of the house by a Border Patrol K-9 unit. No

1 written consents were obtained from the Defendants by the agents. During the search, the
2 Defendants were seated first under a mesquite tree and later on a couch located on the front
3 porch of the residence.

4      Mr. Tilden testified that he asked the agents why they were on his premises, did they
5 have a warrant, and if they had seen the "No Trespassing" signs. As to the latter two
6 questions, Agent Gonzalez responded no and that he did not need one (warrant). The
7 response to the why question, per Mr. Tilden, was that Gonzalez and his trainee were
8 following tracks to the neighbor's house and the Tilden residence.

9      Mr. Tilden testified that he would not talk to the agents nor consent to a search
10 without a warrant and that 3 or 4 times he declined to provide a consent. Eventually, per Mr.
11 Tilden, the agents used a dog to search the area.

## DISCUSSION

### I.   Open Fields and Curtilage

14      Border Patrol Agent Gonzalez, upon his entry on the Tilden property, was on what is
15 known in the law as an "open field". The issue becomes whether, at the time of his discovery
16 of the marijuana, he had entered the curtilage of the premises.

17      If Agent Gonzalez discovered the marijuan in or from an open field in plain view of
18 all, the Defendants are afforded no Fourth Amendment protection. Oliver v. U.S., 466 U.S.
19 170 (1984). In this case, Agent Gonzalez was traveling along a distinct trail leading towards
20 the Tilden home. The agents' presence as such establishes what trails suggest, i.e. humans
21 traverse this property along the trail's route. No one has an expectation of privacy along an
22 access route.

23      In addition, the marijuana was observed in plain view from the agents' position at the
24 end of the trail near the house. Harris v. State, 390 U.S. 234 (1968). At this point, the agents
25 had a duty to seize the contraband or risk its loss.

26      The layout of the premises supports a conclusion that the gazebo area was outside the
27 curtilage of the home. First, the area around the house was not enclosed by any fence. The
28 only barrier near the house was the shrubbery south of the house and driveway, but between

these and the gazebo area. From the perspective of the trail, the shrubbery created a privacy shield for the house, but not the gazebo. From the perspective of the house, there is no sense in creating a privacy shield for the gazebo area that opens out onto an open field. U.S. v. Dunn, 480 U.S. 294 (1987).

Even assuming the gazebo area is within the protected curtilage, the Fourth Amendment does not extend its protection to objects readily identifiable as contraband which are placed out for one and all to see.

Unlike U.S. v. Romero-Bustamante, 337 F.3d 1104 (9th Cir. 2003), Title 8 U.S.C. § 1357(a)(3) permits access to private (remote) lands, which authorized Agent Gonzalez' presence on the Tilden property. In this case, Agent Gonzalez could very well suspect either drug or alien smuggling.

**II.     Consent**

Defendant James William Tilden testified that neither he nor his wife consented to the search of their property. Three agents testified that the Defendants both consented. The Court believes the agents, but not because they are agents, but rather because they came across as sincere and truthful. In the case of Agent Gonzalez, the Court found him credible as to consent because of his earlier testimony about the tracks on the trail. He could have easily said the tracks were very fresh. Instead, he testified that the tracks appeared to have been made within the last 24 hours.

By way of contrast, the Court found it hard to believe Mr. Tilden's testimony that Agent Gonzalez said the Sheriff had to be present in order for Gonzalez to search the premises. Then Agent Gonzalez allegedly said they would not wait, to which the Tildens said they would wait, which all did. After an hour, the agents searched. Hard to believe.

The Defendants consented to the search.

### **CONCLUSION**

It is the recommendation of this Court that the District Judge, after his independent review and consideration, enter an Order **DENYING** Defendants' Motions to Suppress (Docket # 47 and # 59).

     Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as CR 03-01377-TUC-RCC.

     DATED this 28th day of February, 2008.

_Bernardo P. Velasco_
Bernardo P. Velasco
United States Magistrate Judge